apologize to you all that we're starting this late. The reason we're starting late is that earlier there was a hearing going with another division and they started some time ago but they and they're normally done by one o'clock without a problem but today it went way over and it just ended a couple of minutes ago so we did start right away and the three justices have been sitting here waiting for this thing to start so we do apologize. So now I'd like to ask the lawyers if you could please introduce yourselves. Good afternoon, your honors. My name is Scout DeStefano from the state appellate defender for James Powell. Good afternoon, your honors. Mary Hodson, dealer assistant state's attorney on behalf of the people. Okay, good. And Ms. DeStefano, how much time will you need today? I'm requesting about 17 minutes for the argument and then three minutes for rebuttal but I don't imagine I will use the full time. Okay, and Ms. Hudson-Butler, say it for me one time. I'm Hudson-Bueller. Hudson-Bueller. Okay, Ms. Hudson-Bueller. And how much time do you need, Ms. Hudson-Bueller? Approximately 10 to 15 minutes. Okay, all right, that'll be good. And we generally give everybody 20 minutes and if you find that you have a point that you wanted to make and because we're asking lots of questions you're not able to get to that point and we tell you that your time has come, we will give you additional time to complete your thought or to finish that point. If you need a minute or two, just let us know that and we'll work with you. Thank you. Okay, thank you. And so, Ms. DeStefano, please get us started. Thank you. Good afternoon, your honors, again and may it please the court. Today, I plan to discuss both issues outlined in the briefs. First, I will argue why the state failed to prove Mr. Powell guilty beyond a reasonable doubt. And second, I will argue how the state's improper comments during closing arguments denied Mr. Powell his right to a fair trial. First, the state's evidence does not establish that Mr. Powell was the individual who sold drugs to Officer Rattler. The state's case boiled down to two pieces of evidence. The testimony of Officer Rattler, the testimony of Mr. Powell, and the evidence of the surveillance video created by the police. Mr. Powell was identified by the Officer Rattler, right? He was described by Officer Rattler for the clothing that he was wearing and then, are you referring to his identification of him after the arrest? Well, yeah, because that was really when he saw him before, we know from the video, his description of the video in his testimony. And then, what I'm getting at is the state in the reply, in the response, spends a lot of time on the bigger issues, the factors and biggers? Correct, yes. And you don't respond, I didn't see a specific response to that in your reply. So, that's what I'm trying to get at. So, the identification that Officer Rattler made was about half a block away from where the arrest took place and he was still in his car when he made that identification. So, it wasn't that he made the identification right there in front of the arrest and he also left this out of his police report. So, that was something that was argued at trial and he was impeached on, although there were other officers that did include that in their police reports, but our argument is that his identification was not enough because he was not up there next to Mr. Powell when he identified him after the arrest took place. What is your response to the interaction between Powell and Rattler in that they're looking at one another? How long did that take place and apparently he had a hoodie on or a hood and is that a factor too? Sorry, sorry, did not mean to interrupt. No, no, go ahead. Yes, so the video does not show any of those things. The video does not show an interaction between Officer Rattler and Mr. Powell. It shows them in the restaurant together, but the description that Officer Rattler gave of the individual that sold him drugs was very generic. It was red jacket, hoodie, jeans and there were at least two other people inside the restaurant wearing similar clothing. There was another man who had his hood up and was wearing light-colored pants and then another individual wearing a red jacket with a hoodie and a beanie and jeans and that individual actually did approach Officer Rattler and is seen in the video. And he said that he was trying to sell him some shades. Yes, that is what he testified to. It's not clear what that individual was offering him, although it is clear he was approached by that individual. So our argument is that the identification alone was not enough because the video does not show them interact and the time that they are even near each other or in the same area of the restaurant is no more than four seconds. And based on the testimony of Officer Rattler, the exchange that took place would have taken longer than four seconds. So in addition to the generic description, it was not enough to say definitively that it was my client that sold him drugs. Then on top of that, Officer Rattler also purchased the drugs with a pre-recorded $20 bill. And that bill was not found on my client and he was arrested three or four minutes after the alleged buy took place. So in that time, he would have had to figure out first he had just been subjected to an undercover buy. With regard to that purchase, I didn't see anything that said that there was a discussion on the price. You mean the price of the drugs when the buy took place? Right. Right. So how did he know? He gave him one $20 marked bill, right? And we know also from his own testimony of Rattler, that was a bargain for what he got. And in fact, it turned out to be even a bargain twice good. So that being so, how did he, you know, why would a neighborhood drug dealer, as they characterize him, sell it? You're saying that that's not rational? Correct. And that does lead into the second argument in our briefs that characterizing him as the neighborhood drug dealer was not only prejudicial in and of itself because this case only consisted of one buy. This was not a case of multiple buys. And the state was arguing by characterizing him as a neighborhood drug dealer as if he was doing multiple sales and that's what he was on trial for. And there was no evidence of where the other charges that he had been convicted of took place, is there? Correct. There wasn't. It was, he was, so my client did testify. So then he, the two conviction, two of his prior convictions were stipulated too, but it was just the basics of that. It wasn't the area or the neighborhood and there were no details on those convictions. So even though it was objected to and immediately sustained, it was still highly prejudicial to my client. And if I could just wrap up the first point and then I will lead into that second point. So in addition to the identification of Officer Rattler, of the person that sold him drugs, it was extremely generic. Two other people in the store were wearing similar clothing. The pre-recorded bill was not found on my client less than three to four minutes after the buy took place and no drugs were found on my client. So for those reasons, it is our argument that the states failed to prove Mr. Powell guilty beyond a reasonable doubt and we ask that you overturn his conviction. Do you have any authority that says that the marked money needs to be found on the seller at the time of arrest or that narcotics have to be found on the seller at the time of arrest? No, and it's not our argument that it is a requirement. It is only adding. So what difference does it make if there was no money found on him and no narcotics found on him? The elements of the offense are sale and narcotics. The state proved through the officer testimony that there was a sale and the recovered narcotics were recovered item was tested to be narcotics. So why is the failure to have the marked money on him five minutes afterwards essential to the conviction? It's not our argument that it's essential to the conviction. It's our argument that it adds to the reasonable doubt that it was my client who sold the drugs. And was that argued to the jury? Yes, it was. And was the failure to have narcotics on him at the time of arrest argued to the jury? Yes. And was the jury allowed to draw whatever inferences they could from that evidence and still render a guilty verdict? Weren't they entitled to do that? They were. Okay, so why is it a failure here to prove guilty beyond a reasonable doubt if all that was presented to the jury, argued to the jury, and apparently rejected by the jury? Yes. What's missing here? So in light of those factors, it leads me into my second argument that the evidence was weak at best here and the prejudicial comments that the state made in their closing arguments tipped the scales to convict. Those arguments were prejudicial to my client and they were not So first there was a point when the prosecutor argued that Mr. Powell was a liar and the state told the jury that his lies were evidenced by the fact that he lied about his address. But the state took it a step further and told the jury that Mr. Powell lied about his address to the police when he was arrested because it was different from the address he was released to on parole. First, the fact that Mr. Powell told the jury he had two addresses and explained why he had both of them completely undermines the idea that he was lying about these addresses. And second, the state mentioning the word parole was prejudicial and also outside the record. There was no testimony or evidence admitted that would indicate Mr. Powell was on parole. While the two convictions were stipulated to, there was no sentencing or anything that would accompany those convictions what they were for and when. So the state elevated this prejudicial nature of the argument when it persisted after objections. Three times the state mentioned that Mr. Powell was on parole and three times it was objected to. Two were sustained. And after the third objection, the state still found a way to prejudice my client when they argued that Mr. Powell was a liar again because he lied about where he lived. And while they didn't use the word parole here, they still made that same argument that he lied about where he lived because it was different from the address he gave to the parole board. The jury was then left wondering whether or not Mr. Powell was on parole and for what crime he was on parole for. And the state's persistence in getting the jury to hear that left them wondering why that was so important. And it's reasonable to conclude that these comments persuaded the jury to convict Mr. Powell on those facts and that he had other bad acts on his record and that he was deserving of this punishment. And these comments did constitute a material factor. And that leads into what I had previously talked about with the neighborhood drug dealer argument. And that fits right into them saying that he was on parole and that he had prior bad acts which was already stipulated to and this was acting as if it was a whole other crime. So although that objection was sustained to immediately, it still prejudiced my client. And the state continued on to say that the jury was the quote conscience of the community and that they needed to rid the community of neighborhood drug dealers, insinuating that Mr. Powell was that neighborhood drug dealer. And to both of your arguments, your first argument and your second argument, they are involving various situations that occurred at the trial. And is it your argument that you would have to look at the totality of those circumstances? Maybe one would not be enough in this case, but when you add for what like you were just saying, each of these different things that occurred in their closing, when you add it all together, then it's prejudicial. In the same token on your first argument, just because he didn't have the $20 bill or any drugs on him alone might not have been enough. But when you add in the other things you talk about, that's where you're arguing you run into a problem. Correct. That is our argument that it was the totality of the bill is not an element of the crime and it's not essential to proving somebody guilty. It does add to the reasonable doubt and it adds with the other elements that I had already mentioned in that the weak identification and the generic description of the individual was not enough based on all those other factors together to convict. And then it further is not enough when these prejudicial comments were made by the state, especially where they did it after multiple objections which were sustained. And then finally, it leads me into the final argument with the state acting improperly during closing arguments was when they made the argument or responded to the argument that the defense counsel made in her closing argument about getting rid of the money. And the state took it a step further. The defense counsel was attempting to poke holes in the state's if they believe he got rid of this money, they should have shown how he did that. And the state took it a step further to say, no, he did get rid of that money. He did exchange it. He did stash these other drugs in the liquor store, but there was no evidence of that. And it was not a reasonable inference to substitute such an inference with the investigation that the police or the state should have done when the arrest took place three or four minutes after the alleged buy. They could have easily gone and searched for that pre-recorded bill. If it truly was their belief, it had been stashed in the liquor store. So these improper... Doesn't the video show a couple of police officers going into the store after the defendant was taken into custody and then coming out of the store? I did not see that on the video. The video ended after my client passed Goldie's and started to walk the other direction away from the liquor store. Unless they were undercover officers, that was not something that I saw on the video. And if they had, that was not testified to. They didn't talk about that they had gone in search for the pre-recorded bill or any other drugs that the individual who sold Officer Rattler drugs may have stashed or hidden. So these improper comments by the state were not simply harmless error and they did take the scales to convict in light of all the other evidence and the evidence here was not overwhelming. Well, why would he even hide the $20 bill? He wouldn't have had any idea that he had sold to an undercover. I mean, he was undercover and he knew about it. He wouldn't have sold. I mean, it's as simple as that. You know, there's no evidence of that whatsoever. Right, exactly. And that goes to our first argument that the fact that he didn't have that pre-recorded bill on him in three to four minutes time gave him no time to realize that, oh, I just was subjected to an undercover buy. I need to get rid of this cash. So that goes to that and then also it is becomes even more unrealistic to say that he did get rid of it or any other on his person. Yeah, I've got a question for you, counsel. Why don't you take a second, walk us through the video. I realize that the officer testified and the conviction is strictly based upon the officer's testimony, but it seems that you're arguing that what the video evidence does not agree with the officer's testimony. So walk us through those steps and the ways in which the video evidence counters the officer's testimony. Yes, so it's not so much that the video contradicts the officer's testimony, it's that it doesn't corroborate his testimony in that him and my client interacted with one another in the store. So the video is about nine minutes long. It changes towards the beginning and also throughout it changes focus from several different patrons. So it's clear that the individual or the undercover or the other officer, the surveillance officer that's filming is not sure who their subject is, except that they know who Officer Rattler is, the undercover officer. So there's a time where Officer Rattler goes and buys alcohol from the liquor store. He comes back, he's kind of hanging out in front of the store. Same with my client. My client has gone into the store at a certain point. He purchases food inside and then Officer Rattler enters. He goes to the side, he sits down. The individual in the red jacket with the hoodie approaches him and then a few more seconds go by and then Officer Rattler gets up and he leaves. And there's two individuals with the red hoodies on in the restaurant. Correct. And I think there are a total of four or five Sorry, go ahead. I thought you said earlier, just correct me if I'm misquoting you, that the person who actually approached Officer Rattler was the other person, not your client. Correct. So my client and Officer Rattler are never seen together, like interacting with one another inside the restaurant. I mean, it's a pretty small restaurant. There's no video of any hand-to-hand from either person with the red hoodie. There is. You can see the person in the red hoodie while Officer Rattler is seated by the window appear to hand him something. That is seen on the video. Does Officer Rattler hand the other person something as well? You don't see that. Cards are going by in between and so all you can see is him appear to appear to offer him something and then... I'm sorry, I didn't mean to Then once the person who is handing Officer Rattler something can, from the video, can you tell which of the two people that have the red jacket on that is handing Officer Rattler something? Yes, that is not my client. That's clearly the other person. Correct. Okay, all right. You can continue on. You were giving me you were going blow by blow in terms of how the video, and I understand you don't want to use the word contradict, but doesn't cooperate. And I'm fine with your language. Go ahead, you can continue on. So yeah, I mean that is essentially the gist of the video since the officer's testimony is that the deal occurred in occurred inside Goldie's, the restaurant. So the Officer Rattler exits and then a little bit later my client exits and he appears to... and then he walks towards the liquor store and he testified about this that he wanted to get paid. The same thing that Officer Rattler just did because Officer Rattler also left to go to the liquor store, correct? Well, Officer, while my client was inside Goldie's, Officer Rattler went to the liquor store. He was tired of entering the restaurant. Correct, and I don't believe my client witnessed that and Officer Rattler testified that he does that to just kind of go with his undercover demeanor and just, you know, appear to be like doing what everybody else is doing. It's kind of a common thing that that's what everybody in this neighborhood does. They go to the restaurant, they go to the liquor store, back to the restaurant, back to the liquor store. It's just the way the neighborhood is. Correct. And I'm familiar with those neighborhoods, so I know that that's a neighborhood similar to that one. I'm not familiar with this neighborhood, but there are neighborhoods similar to that that I am familiar with and I know what... I understand that whole thing. So when your client left to go to the liquor store, he didn't go back into the restaurant because he was arrested prior to going back into the restaurant. Is that correct? That's correct. So when he was inside Goldie's, he ordered food and he purchased a pizza puff meal, which there are photos of the menu that show that exact item, and they told him it would be about five to ten minutes. So that's when he was like, okay, maybe I'll wait around. He's like, no, I'm going to go to the liquor store. Went to the liquor store, they didn't have what he wanted, so he left to go to the other liquor store and then he was like, well, now it's been about five or ten minutes, I should go check on my food. Went back to check on the food and then he was arrested. Prior to going into the restaurant. And the other person who had the red hoodie on, was that person... do we know if that person was still in the restaurant at the time? Was there any evidences to that? So the video... I want you to answer if you don't know. It's hard to tell because the camera view changes and it goes away from the front of Goldie's. So at a certain point, my client's not even seen in the frame. He has gone to the liquor store and it hasn't panned over yet to the liquor store. So again, they're just not sure who they're supposed to be focusing on at this point. And then... Because the officer who's taking the video still knows nothing in terms of who has made a buy. He or she has not recorded anything in terms of a hand-to-hand with any person to be able to say this is our suspect. Is that correct? Correct. That's correct. Officer Rattler did radio the clothing description, but the officer that did the surveillance did not testify and it's not clear whether he was aware of that description. The officers that arrested him, of course, got that radio from him, but it's not clear whether their surveillance officer did. So the only witness was Officer Rattler? And Officer Fernandez, who was the person that was correct, that was waiting in the car for him when he came back from the purchase. If you know... What about the officer who made the arrest? Didn't he testify that he arrested the person that fit the description of officer, whatever his name, Ritter? Rattler. Yes, I'm sorry. I thought you were referring to with the surveillance team that was said that when I arrested him, he fit the description given by Officer Rattler being a black jacket, red hoodie, and jeans. Correct? Correct. And Officer Rattler testified that after your client was taken into custody, they drove by and he confirmed that the person that they had in custody wearing the black jacket, red hoodie, and blue jeans was the person he bought the Yes. Now, one further thing. And the person you keep talking about having a red hoodie was not somebody described as having a red hoodie. It was a second person described as having a red jacket. Correct? Red jacket with a hoodie underneath. Yes. Right. So Officer Rattler never confused the two. He always distinguished between the defendant with the black jacket, red hoodie, and blue jeans and the other person with the red jacket and the hoodie. He distinguished them more clearly at trial in his testimony. But what counts at trial in his testimony? Doesn't it count for the jury? Yes, it does. I'm just referring to what happened when the undercover buy took place. And it wasn't as if they drove up right next to where the arrest was and he identified him within feet. He was at least a half block away still inside his car with these several individuals inside the restaurant, one that he also interacted with clearly from the video. There were multiple people wearing similar clothing. So in light of it, did he identify him in court? Yes, he did. Okay. Does that count for anything or is that not worth anything? Yes, it counts. And that I apologize. That was not my argument that it does not count. I was simply referring to what occurred during the arrest and the undercover operation that took place versus him being able to describe it in further detail at trial. Okay, thank you. So if your honors have no further questions, I just plan to conclude. So again, the video did not show a transaction between Mr Powell and Officer Rattler. The pre recorded bill was not found on Mr. Powell. No other drugs were recovered from him. And other men inside Goldies were wearing similar clothing. Taken together. This evidence was not enough to prove my client guilty beyond a reasonable doubt. And we ask that you overturn his conviction. But at a minimum, this court should remain the case for a new trial free from the improper comments made by the state. Thank you. Thank you. Uh, this this final and uh, Miss Hazen Bueller, you're up. Thank you. Um, the people proved defending guilty beyond a reasonable doubt. Officer Rattler's identification with the defendant was reliable, incredible. Officer Rattler had been a narcotics officer for 12 years. He had participated in hundreds of undercover buys. He went to 16th and Lawndale for the sole purpose of conducting an undercover buy. He knew that would have to identify the person who he purchased the drugs from. The evidence in this case established that Officer Rattler was at the location. He spoke to the person in the brown vest, asked where he can get the blows. The person pointed him in the direction of the corner store. After going, but what about you have such a experienced officer? Uh, no discussion about how much money just gives him 20 bucks. This is what happened. Officer Rattler went in. Defendant said how much officer Rattler said to and gave him the $20. The defendant didn't say, oh, I want more defendant knew what he was a tenor. And then he tendered him the heroin. He gave him the Argonne basement price for for that. And even Rattler had admitted that it was a one third of what the going rate was, but it turned out he couldn't even estimate the amount of drugs that he actually bought was twice as much as his estimate more than twice of his own estimate of somebody who has done this hundreds of times. I mean, how good is this? How good is his testimony when he can't estimate and he pays just a bargain price that doesn't make any sense. Your honor, why don't we first of all the officer gave the defendant the $20. The defendant didn't say, wait a second. I need more money. I'm giving you two bags of heroin. How do we know that? How do we know that? Because we're looking at officer Rattler's identification as a seasoned police officer. And when you look at all the factors, the bigger factors in determining where this was a proper identification of the defendant, it is clear that this officer identified defendant as a person who sold him the drugs. Well, a lot of people identify people and just because he's a police officer, there isn't a different test for police officers. You're absolutely right, your honor. And when you look though at the biggest factors and you look at them as just look at this officer and just we won't even say the word officer at this witness. Let's look at it. Let's look at the ample opportunity. There were two or three people in the store. Defendant was there. He made a not a gesture that this officer, although we're looking at him as an eyewitness, knew that to be a gesture of of that I'm able to sell you drugs, but that he had an ample opportunity. It was daylight. It was 215. There was nothing obscuring you. There were no people in between and this officer as the undercover officer purchasing drugs. He's purchasing drugs for somebody. He wants to have a high degree of attention and he's looking. He's seeing what the how long it is to take place the face that they were in each other's presence. According to the according to the testimony, it was according to the video. Well, the video when you look at the numbers, it said 10 seconds at the most, but these at the most and so and all these things happened within less than 10 seconds. Right? I mean, by your by your estimation. Well, I don't I don't have the video in front of me and I had it, you know, it's in our it's in our brief. How many seconds a lap between it, but this is a drug deal drug deals are under the drug deal. There's still the testimony was that he's sitting on a ledge that he he approaches Paul. He sees a gesture. He's asked how many there is an exchange of the drugs and the $20 bill. There's a request for a phone number. There's a response to that request. I mean that takes a long time to do and you're saying that was all done, you know in a few seconds with with a seconds, but this can be quickly done when you go up how many to here's the money. What's your phone number? I'll be around. What kind of drug dealer is it doesn't have any more drugs on him. He might have sold them out to 15. We don't have any testimony of that one way or the other do it. So apparently he wouldn't know that. He wouldn't know that officer Reller wouldn't know if this was the last all officer at Reller said was two and the defendant had to that's all if it was a defendant. I mean the question there are people who have similar clothing involved. Do you agree to that? The only thing I disagree that there were two people with similar clothing. I do agree that the person who approached officer Reller had a red coat and he didn't. I I looked at my notes. I don't see anything about a hoodie. I see something about the testimony was he had a beanie hat, but regardless, I thought there was testimony. He had a dark hoodie and blue jeans and a red jacket, which is very different from a black confused and he apparently, you know, I'm just trying to say this is this rational when you add everything together because as council said, it's not just the one issue. It's all these issues put together that we have to look at exactly you agree to that too. Well, II will say and I will say that when you look at everything that the overwhelmingly the overwhelming evidence established this defendant's guilt, the jurors heard the evidence the jurors heard the defendant testify officer Rattler testified. They heard the discrepancies with regard to not filing the pre recorded fund. We did not have to prove that we had to prove delivery of a controlled substance and that's what we did with the officer's testimony with regard to the video. When you look at the video, we have the dirty windows. You don't you can see in it, but you only see shadows, but officer Reller also the individual with the red jacket walked up to him and tried to sell him shades. Officer Reller is going to jacket shades black jacket drugs, but also his description was always consistent. He never ever wavered in his description and when council said that the officer's idea was bad because he was far away. This is an undercover by the officer's not going to get out of the police car and walk up and say yeah. This is the guy there were other people around this would blow his cover. The officer based on his experience said he was close enough to identify the defendant officer Fernandez testified. You're saying he that what you're saying and based on the person who sold him the drugs. Absolutely. I mean a half a block away a man with a hoodie. It's very hard to see somebody's face. I don't think there was testimony was half a block away. I don't think there was any testimony was by half a block away. The officer testified that he was close enough and he was able to identify the defendant the family how he identified the defense. He didn't say he identified from his face or whether it's from his clothing. Oh, we don't know if his face was turned around or what he identified the defendant within 2 minutes of the person who sold him the drugs. This is a very short time frame between the time he identified the defendant initially for the pickup by his clothing. He didn't say anything about the man's face at all. No, correct. That's absolutely correct. But again, let's look at all the factors and that this is a positive identification by an officer who's conducted hundreds of drug buys. It doesn't matter. We already went through that. It doesn't matter how many drugs you're right and we did not argue that in closing argument. That was not our position in closing argument. I'm just saying if you look at the biggest factors and check off each one and this individual who testified that every single of the bigger factors to make a positive and reliable identification and as I already said, we did not have to show that there were pre-recorded funds with regard to two or three people in there. Again, the individual, the officer, red jacket, black jacket. He testified the jury heard him. The jury found him credible with regard to the surveillance video. We didn't we brought in the surveillance video and I agree with you does not show hand-to-hand transaction. But what it does, it corroborates officer Fernandez who testified that after officer Rattler left and walked down the street, defendant left and was looking in the officer's direction. And when officer Rattler got in that police car, officer Fernandez said, who sold you the drugs? And he pointed at the defendant. He immediately went on the radio and gave the description where officer Milan, the enforcement's officer, went to that location and defendant fit that description. So the video corroborated that but I absolutely agree with you. There was nothing regarding the transaction. But if you look at all the evidence and you look at this identification, a single eyewitness can sustain a conviction. This witness was a credible witness and a reliable witness and he based on his testimony and the corroboration of what officer Fernandez saw after officer Rattler left and then seeing and testifying the defendant went into the liquor store. We overwhelmingly established defendant's guilt. With regard to the closing arguments, like I already argued, the evidence was overwhelmed. None of these arguments. I mean, to say it was overwhelming, uh, seemed to me you said, you know, one witness can be enough, but we have Powell's testimony. We have his testimony. You just said the video is not clear. So I don't see how you can say it's overwhelming. I mean, there are issues here. Um, so it could be a close case and I will say it was sufficient to convict him. But the jury again hurt us. The jury heard both defendant's testimony, the officer's testimony and the two other officers. So it was sufficient to convict him. But if you also look at the closing arguments, the jury words instructed the closing arguments are evidence and that anything that was said that was not based on the evidence should not be considered. But if you look at also several of these, um, comments that the state made, uh, were injected to and sustained with regard to the neighborhood drug dealer objection, the court said sustained as to neighborhood. You're correct. That has already been cured. The fact is there are several instances. I mean, it's not just the one one instance we, you know, that's one cases have looked at that differently. But when you have several going on in here, uh, plus the, the, uh, that he was on probation, uh, on parole, excuse me. Um, you know, you add all that together, uh, that's their argument. So what's your response to the fact that not taking them one by one, but taking them as a group. I do. I do want to just address with regard to the parole. What happened here was when the state's attorney first made the objective complaint of objection was sustained. The assistant state's attorney tried to rephrase it. And when he tried to rephrase it objection and the judge says, sorry, I'm sorry. And the state's attorney, uh, re rephrase the question or the, the, the question he had immediately without even the defense objecting. Again, the court says sustained disregard that argument. So when the jury hears a judge say disregard argument, you, we would hope that the jury would listen and over. And when you hear things that's, that's going one by one by one, but this is one plus one plus one, several things going on here to try to prejudice the jury that, uh, stuff that's not an evidence that shouldn't be discussed. So it's not just one incident. It's to me, it's a collective. Well, there were three, there were three that they were, that they objected to that they put in their brief and that they brought in their appeal. So we've already taken, we've because the objections were sustained, but that doesn't, no, no. Uh, you can sustain, uh, several objections. That doesn't mean it hasn't prejudiced the jury. Well, because this language is not magic. It doesn't get into people's brains. We don't know, you know, the damage is done once you hear it, it's done. So the, the question is, you know, how often and how bad was it? And that's what we have to look at. Isn't it? Well, yes, it is. But I think that when you look at, you look at the record and read the record and you look at the entire closing arguments that these were with regard to the $20 bill. I mean, that's a reasonable inference. The defendant goes into a liquor store after watching officer Randler go down the street after watching him. We don't know if the defendant it's reasonable. It's a plausible that the defendant thought, Hmm, maybe I better hide this and went into the liquor store. Then this whole thing doesn't make any sense at all that he knew he was buying drugs from an undercover agent. That's what you have to believe that in order to make that argument. And there's no evidence whatsoever that he knew that he was being set up. I said it was a reasonable inference. I never said I don't see how it's reasonable. You'd have to say that there's some evidence that he knew it was an undercover buy. Otherwise there's no reason to get rid of the $20 bill. But you know what? I will say this that we did not. Again, we did not have to. We did not have to have these funds. We did not have to have the drug again delivering. No, but you did. And then you made an argument about it that has not based on the evidence. Well, I'm talking about what the evidence was and that he didn't have it when it was on him. What we do have is we have officer Randler leaving the store and he had here on with him. That's the inference that he sold that there was a transaction there. And he testified in the jury heard the officer Randler testify and they believed him and they gave him credibility. They heard all of you. You argue that you don't have to have them. And yet that's true. We all agree with that. But as counsel stated, defense counsel stated earlier, you don't have to have them. But when you don't have them, it has an impact on on whether or not you're proving someone guilty beyond a reasonable doubt, especially when you say you have it, but then you don't have it. But I want to jump to something else. And the prosecutor's closing, you said that everything was sustained. But the two comments that were not were that the jurors are the conscious of the community and they need to help the community. It was an objection and the judge overrule that objection. The next comment was help with the community of drugs and drug dealers. There was an objection and the judge overruled that objection as well. And and I think that's what Mr Stefano is getting to that these comments from the prosecutor were just not appropriate and basically putting the jury against the community. There is some case law from the Supreme Court that makes that I'm sorry, not the jurors against the community, but the jury, the community. The jurors are part of the community and against the defendant. There's case law from our Supreme Court that says that those kind of comments are inappropriate. You know that, right? Absolutely. But when you look at the context when those statements were made, it was prior to the statements being made that the assistant state's attorney was arguing the evidence was urging the jurors to apply the law was saying it was defendant who should be found guilty. It was defendant's actions here today. And after the objective, after the objective to comments, the assistant state's attorney said, the defendant is here today because of his actions. Hold him responsible. Find him guilty. This is very different from the Johnson case because in that case, there were other co-defendants and this was part of the whole, you know, long time ago, the Murray Blue and all the facts are different and you argue that. But the question is, let me ask you the question, is a jury the Okay. So they said that that is absolutely wrong. The judge just allowed that to go ahead. He did not sustain the objection that I don't know if you can find another case anywhere where in a criminal case that's been allowed. Well, I did not find it. But in our brief, we were, we cited to a second district case where the court did say that the jurors are the conscious of the community. But distinguishing But that's different to say, but in here, that doesn't, first of all, that wasn't the whatever case it was. I mean, there wasn't a holding. Yeah, right. This is a direct statement of something that the Supreme Court and Thomas criticizes, not the exact language, but very close language, very close to it, the us versus them type situation. And the same thing as a neighborhood. I mean, that protecting the neighborhood. That's what the jury is supposed to do. I thought they're supposed to do something else. And I'm sure you agree with that as well. Well, Your Honor, I'm looking at when I'm looking at the closing arguments, and when we reviewed the closing arguments, this is not an us versus them. This is no, the state did not align itself, the state did not say we did when the only context of referring to the defendant with regard to this conscious of the community was in the context of what the the state did. Well, that's the we. The we is you, the jury versus the defendant. It's not the states, the statement, and we can't ignore that statement. You can look at this, what else is being said, but that statement is a very dangerous statement in a criminal case, let alone in any case, because it's not the way the jury system works. Right. But I think that if you do look at the entirety of what the argument was regarding that the conscious of the community, you will see that it was urging the jurors to find the defendant guilty based on the evidence and applying the law to the evidence that was presented by the state's attorneys. That's our position, and that's if you read it, you can get a sense that that was the argument of the state's attorney. With it, there was no reference to us versus them. Again, wasn't wasn't saying that the jurors should be aligned with the state. It was simply this is what the evidence is. We ask that you apply the law and in the end, in the conclusion, when they said the defendant is here because of actions, we ask that you find him guilty. It's our position that the evidence was sufficient to convict this defendant, that we had a reliable eyewitness who was very thorough in the testimony, who knew that it was the defendant. There was no mistake that it was the and that if any, we do not believe that there's any cumulative error here. When several of these complaint of comments were sustained and you look at the complete of the complete closing argument and that there was no cumulative error. If you have no further questions, we ask that you affirm the defendant's conviction. Thank you, Miss S and Beeler and this final word back to you. Yes, thank you, Your Honor. It's just a brief rebuttal. So the state argued that it was about 10 seconds where Officer Rattler and Mr Powell could have been interacting and that is a misstatement of the evidence. When watching the video, you can see that they're only near each other, not even by each other because my client is not even in the frame of the video, but you can go ahead and infer that they were near each other when Officer Rattler exited by the door because that was the side of the restaurant my client was on and that lasted for no more than four seconds. So I just want to point that Additionally, Officer Rattler did testify in the record that he was inside Officer Fernandez's car in the passenger seat half a block away when he identified Mr Powell while he was being arrested. So that was testified to and is in the record and as you all have pointed out the objections while a few of them were sustained, the cumulative error of them did prejudice my client. The jury heard the word parole three different times and even when the word parole was not used in that third or the fourth argument the state made, it still made the same argument that he lied because it's different than what was given to the parole. And then finally, if Officer Rattler was such an experienced officer and he knew the how these drug deals went down, he should have given more of a detailed description. He offered no only the clothes that the individual was wearing, which could be easily confused with the other individuals inside of Goldie's and also the state's argument that my client was staring off into the direction of Officer Rattler. I don't feel isn't a fair assessment of the video. It's he looks around. He's not staring in one direction for the entirety of him standing outside of Goldie's. He goes back and forth and then he makes his way to the liquor store. So for those reasons, again, we ask that you overturn my client's conviction or in the least remand the case for a new trial free of the state's improper comments. Thank you. Okay. Thank you both. Excellent job. We appreciate your excellence. Have a good day.